IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

JUL 1 6 2008

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

RICHARD DeVAUGHN,

Petitioner,

v.

Civil Action No. 2:06cv80
(Judge Maxwell)

JOE DRIVER,

Respondent.

## OPINION AND REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* petitioner initiated this action on August 23, 2005, by filing a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. The original petition was filed in the United States District Court of the Southern District of Indiana. In the petition, the petitioner challenges a decision of the United States Parole Commission. On August 26, 2005, the District Court of the Southern District of Indiana conducted a preliminary review of the file and determined that summary judgment was not appropriate at that time. Therefore, the respondent[1] was directed to show cause why the petition should not be granted. The respondent filed a response to the Court's Show Cause Order on October 21, 2005. The petitioner filed a reply on November 1, 2005. On July 26, 2006, upon petitioner's transfer to USP Hazelton, the Southern District Court of Indiana transferred the case to this district. This case is now before the undersigned for report and recommendation

---

[1] At the time, the respondent was Mark Bezy, the warden at the facility which the petitioner was housed in Indiana

pursuant to LR PL P 83.09, et seq.

## A. **Factual Background**

On June 6, 1991, the Superior Court of the District of Columbia sentenced petitioner to a sixty-six year prison sentence under the Youth Rehabilitation Act ("YRA") for multiple offenses, including armed robbery, assault with intent to kill while armed, assault with intent to commit robbery, and possession of a pistol.[2] See Response (dckt. 13) Exhibit A. Four months later, on September 19, 1991, the same court sentenced petitioner to a consecutive ten year prison sentence under the same act for an unrelated offense of assault with a deadly weapon.[3] Id.

Starting in 1991, the District of Columbia Board of Parole ("the Board") conducted a series of parole hearings for the petitioner. In each hearing, the Board applied the 1987 D.C. Board's Parole Guidelines, and subsequently denied petitioner parole. At the first hearing in 1991, using the salient point factors allowed under the Guidelines, the Board calculated petitioner's total point score to be a level four. Id. at Exhibit B. Based on this level, the Board denied parole and ordered reconsideration for parole by August 14, 1996. Id. at Exhibit C.

At the 1996 rehearing, the Board, using the previous total point score, added one point for negative institutional conduct, but subtracted one point for program achievement. Id. at Exhibit D. Hence, the 1996 total point score was four. Id. Because of the new total point score, the Board denied petitioner's parole. Additionally, the Board ordered a reconsideration hearing for September 11, 1997. Id. at Exhibit E.

On December 5, 1996, the Director of the D.C. Department of Corrections notified petitioner

---

[2] All these offenses occurred on the same date, September 2, 1989/Case No. F4546-90.

[3] This offense occurred on February 7, 1989/Case No. F2030-90.

2

that she had determined that petitioner would be denied further rehabilitation treatment pursuant to the YRA. Id. at Exhibit F. According to the Director, the petitioner's continuous violent behavior towards fellow inmates was the reason for his termination from the program. Id. Hence, petitioner was transferred to an adult correctional facility. Id. Although petitioner could have appealed the decision, the record shows no evidence of an appeal.

At the 1997 rehearing, the Board, again using the previous total point score, added one point for negative institutional behavior, but once again subtracted a point for program achievement.[4] Id. at Exhibit G. Hence, the 1997 total point score was four.[5] Id. Because of the new total point score, the Board denied petitioner's parole. Id. at Exhibit H. Additionally, the Board ordered a reconsideration hearing for September 11, 1998. Id.

On August 5, 1998, the Parole Commission assumed jurisdiction over District of Columbia Code Offenders through the National Capital Revitalization and Self-Government Improvement Act of 1997. Therefore, on June 25, 1999, a hearing examiner for the U.S. Parole Commission ("Commission") conducted petitioner's rehearing.[6] Id. at Exhibit J. Using the previous total point score as a base (three), the hearing examiner, applying the 1987 Guidelines, subtracted one point for

---

[4] According to the record, there is no indication that the D.C. Department of Corrections notified the Board that the petitioner should have been considered under the adult parole procedures. However, petitioner's total point score would not have made him eligible for parole under either the adult or youth procedures.

[5] On April 3, 1998, the Board amended the total point score. The Board determined that the petitioner should not have been assessed a point for negative institutional conduct. However, petitioner's total amended point score would not have made him eligible for parole.

[6] According to the record, a hearing was conducted on September 22, 1998, but was continued without a decision because the Commission found that it needed an official version of the offense in Case No. F2030-90 in order to make a well-informed decision.

program achievement. Id. at Exhibit K. Hence the 1998 total point score was two, indicating parole could be granted. Id. However, the hearing examiner recommended that parole be denied and a hearing be held in June 2000 to review petitioner's adjustment. Id. at Exhibit J. The examiner based the recommendation on the belief that the petitioner was a more serious risk than his salient factor score demonstrated. Id. Furthermore, subsequent to the new hearing, the Commission received additional information regarding petitioner's assault with intent to kill case. Id. Therefore, the executive hearing examiner recommended that the case be remanded for a hearing to discuss the new information with the petitioner. Id.

On December 15, 1999, a hearing examiner conducted petitioner's rehearing. Id. at Exhibit M. The hearing examiner noted that petitioner's sentence would be considered under the D.C. adult offender procedures. Id. Additionally, the hearing examiner stated that the petitioner had been given a finding of "no benefit." Id. During the hearing, the examiner reviewed and discussed the new information received by the Commission with the petitioner. Id. This information included an affidavit in support of the arrest, in which a description of the victim's injuries, including the amputation of the victim's leg, was detailed. Id. Although the petitioner denied involvement, the hearing examiner concluded that, based on the extreme violence of the crimes, parole was not appropriate. Id. Hence, the Commission denied parole and scheduled a rehearing for September 2003. An official written decision was issued in January 2000. Id. at Exhibit N.

On February 24, 2004, a hearing examiner for the Commission conducted petitioner's rehearing. Id. at Exhibit O. At the hearing, the examiner concluded that petitioner's previous total point score had been incorrectly calculated as two. Id. at Exhibit P. According to the examiner, the score should have been a three. Id. The examiner based this conclusion on the fact he incorrectly

subtracted one point for program achievement which had already been considered at petitioner's previous parole hearing. Id. Thus, the hearing examiner determined that the petitioner's total base score was a three. Id. at O. Moreover, the hearing examiner added one point for the petitioner's alleged involvement in a prison riot at United States Penitentiary at Lewisburg, Pennsylvania. Id. However, the hearing examiner subtracted one point for petitioner's program achievement. Id. Therefore, using the 1987 Guidelines, the hearing examiner calculated petitioner's 2004 total point score to be a three. Id. Although the total point score indicated that parole should be granted, the hearing examiner instead concluded that the one point increase failed to consider the serious and violent nature of petitioner's institutional misconduct.[7] Id. Hence, the hearing examiner recommended that the Commission deny parole. Id. A month later, the Commission adopted the hearing examiner's recommendation and denied petitioner's parole. A reconsideration hearing was scheduled for February 2005. Id. at Exhibit Q.

---

[7] The following is a description of Lewisburg riot and the petitioner's alleged participation:

> On 11/13/2002 the Lewisburg DHO Committee found you guilty of rioting. This type of misconduct report is considered new criminal behavior in a prison facility. . . . The riot occurred on 8/18/2002 and involved associates of two groups of inmates who were punching, kicking and wrestling each other. Members of both groups utilized weapons against each other, which included sharpened instruments, razor blades, a softball bat, squeegee handles and bocci balls. Tower officers gave participates [sic] orders to cease their actions and resorted to the deployment of rescission ordinance thunder flashes at which time the inmates separated. Additional staff were called to the institution to assist with the incident and a total of 49 inmates were identified as being participants, 12 inmates sustained various injuries during the altercation, 6 of which were transferred to outside medical facilities. Your participation in this misconduct makes you a more serious threat to the community.

See Response (dckt. 13) Exhibit Q.

On January 24, 2005, a hearing examiner once against conducted petitioner's rehearing. Id. at Exhibit R. At this hearing, the examiner received a copy of the Director of the D.C. Department of Corrections 1996 letter stating that the petitioner would not be eligible for further benefits under the YRA. Id. Again the hearing examiner calculated the petitioner's total point score using the 1987 Guidelines. Id. At this time, the hearing examiner concluded that the petitioner's 2005 point score was a two. Id. Again however, although the total point score allowed for possible parole, the hearing examiner concluded that because of the violent nature of the petitioner's offenses, including the alleged misconduct during the riot, parole should be denied. Id. On February 11, 2005, the Commission adopted the hearing examiner's findings and denied the petitioner's parole. Id. at Exhibit S.

## II. Petitioner's Contentions

(1) The Parole Commission violated his due process rights by denying parole when the guidelines indicated that he should be paroled.

(2) The Parole Commission and the District of Columbia Parole Board applied the parole guidelines for adult offenders rather than those used to sentenced under the Youth Rehabilitation Act.

(3) The Parole Commission violated the *Ex Post Facto* Clause of the Constitution because it applied parole laws that were not in effect when petitioner committed his crimes.

(4) The Parole Commission did not have an adequate factual basis for its decision to deny petitioner's parole.

## III. Analysis

### A. Background

On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir.1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2). The Revitalization Act provided that the Parole Commission was to follow the parole law and regulations of the District of Columbia, but also granted the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code Ann. § 24-131(a)(1); Simmons v. Shearin, 295 F.Supp.2d 599, 602 (D.Md.2003).

Subsequently, the Commission established amendments and revisions to the 1987 guidelines of the D.C. Board of Parole, which had remained in effect until August 5, 1998. See 28 C.F.R. §2.70, et. seq. On July 21, 1998, the Commission's amended version of the parole rules and guidelines were published in the Federal Register at 63 FR 39172 and are found at 28 C.F.R. §2.70 et. seq. The Commission's decision-making guidelines are found at 28 C.F.R. §2.80.

Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they were transferred to the jurisdiction of the

Commission, does not create any liberty interest in parole. See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C.Cir. 1996) (D.C. parole statute and regulations do not create any liberty interest in parole.) Furthermore, Congress committed decisions to grant or deny parole to the absolute, unreviewable discretion of the Commission. Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981). Parole decisions are therefore not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedures Act, 5 U.S.C. § 701(a)(2). Rather, judicial review is limited to a consideration of whether the Commission "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations. Garcia at 988; see also Fardella v. Garrison, 698 F.2d 208, 210 (4th Cir. 1982).

Accordingly, the Commission's exercise of its discretion in denying the petitioner parole and departing from the guidelines is unreviewable, and thus this Court is "without power to engage in judicial review of the Commission's substantive decision" to deny him parole, Garcia at 988. In other words, the substance or merits of the parole decision concerning the petitioner are beyond judicial review. However, the petitioner's claims must still be analyzed to determine whether they may be read as claiming that the Commission acted without authority, unconstitutionally, or in contravention of its own regulations.

**B    Ground One**

The petitioner's first claim is that the Parole Commission violated his due process rights by denying parole when the guidelines indicated that he should be paroled. More specifically, petitioner states that he has a liberty interest in parole, thus entitling him to due process protections. This claim

is without merit.

The Supreme Court has long stated that the Constitution does not create a liberty interest in parole which is entitled to due process protection. See Greenholtz v. Inmates of Nebraska Penal Correctional Complex, 422 U.S. 1, 7 (1979). However, independent sources, like state law, may create such an interest. Id. Furthermore, the District of Columbia parole statute and its applicable regulations do not create a liberty interest in parole. See Price v. Barry, 53 F.3d 369, 370 (D.C. Cir. 1995); Ellis v. District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996); Brandon v. D.C. Board of Parole, 823 F.2d 644, 648 (D.C. Cir. 1987). Hence, the case law clearly contradicts petitioner's contention; there is no liberty interest in parole, thus no due process protection is warranted. Therefore, petitioner's claim should be dismissed.

## C.     Ground Two

The petitioner's second claim is that the Parole Commission and the District of Columbia Parole Board should have considered his parole guidelines established for youth offenders sentenced under the YRA. Once again, petitioner's claim is without merit.

The YRA states that if an offender is under the age of twenty-two and has not been convicted of murder, then the offender is eligible for sentencing as a youth offender and the court may order treatment and supervision. See D.C. Code § 24-901. Once the offender starts serving his sentence, the YRA allows the Director of the Department of Corrections to make a finding of "no further benefit" in regards to treatment. See D.C. Code § 24-905. If the Director makes such a finding, the inmate ceases to be classified as a youth and becomes classified as an adult offender. See D.C. Code 24-903(d). As mentioned previously, the record shows that on December 5, 1996, the Director of the Department of Corrections informed petitioner that she had determined that a "no further benefit"

status would be made. See Response (dckt. 13) Exhibit F. Thus, at this time, petitioner ceased to be classified as a youth offender. Based on this reclassification, the petitioner was transferred to an adult correctional institution and was considered for parole under the provisions applicable to adult offenders pursuant to 28 C.F.R. § 2.106(c).

Additionally, petitioner asserts that he should have been released prior to his termination of his youth status. In Bogan v. District Columbia Board of Parole, 749 A.2d 127, 129 (D.C. 2000), the District Court for the District of Columbia held that the YRA provides that youth offenders serve a term of confinement unless released on parole at the discretion of the Board. The record clearly shows that the Board never granted parole to the petitioner as a youth offender. Upon the Director's reclassification, the petitioner became an adult inmate, and was considered for parole on the basis of the regulations for adult inmates. If petitioner had wanted to challenge the reclassification, he could of done so by appealing the Director's finding pursuant to the procedures in D.C. Code § 24-905. However, the record shows that the petitioner failed to pursue such action. Hence, both the District of Columbia Parole Board and the United States Parole Commission correctly applied the parole regulations to petitioner. Therefore, the petitioner's claim lacks any merit.

**D.   Ground Three**

The petitioner's third claim is the Parole Commission violated the *Ex Post Facto* Clause of the Constitution because it applied parole laws that were not in effect when petitioner committed his crimes. This claim is without merit.

As the Supreme Court has explained, "[t]o fall within the *ex post facto* prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing

the punishment for the crime." See Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citations and internal quotations omitted).

The United States Parole Commission obtained jurisdiction of D.C. Code offenders on August 5, 1998, through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C.Cir.1998). The Revitalization Act provided that the Parole Commission was to follow the parole law and regulations of the District of Columbia, but also granted the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C.Code Ann. § 24-131(a)(1); Simmons v. Shearin, 295 F.Supp.2d 599, 602 (D.Md.2003).

Subsequently, the Commission established amendments and revisions to the 1987 guidelines of the D.C. Board of Parole, which had remained in effect until August 5, 1998. See 28 C.F.R. §2.70, et. seq. On July 21, 1998, the Commissions amended version of the parole rules and guidelines were published in the Federal Register at 63 FR 39172 and are found at 28 C.F.R. §2.70 et. seq. The Commission's decision-making guidelines are found at 28 C.F.R. §2.80. These guidelines expanded the "total point score" that is contained in the 1987 guidelines of the D.C. Board of Parole. 28 C.F.R. §2.80. Pursuant to these guidelines, the prisoner is assigned a salient factor score which is one of the factors used in calculating parole eligibility.

The salient factor score is then used to determine the base point score. The base point score is determined by adding the salient factor score to the scores obtained by determining whether the prisoner's current conviction involved violence against a person and whether a prior offense

involved felony violence. The base point score allows the Commission to calculate a Total Guideline Range, which is the total time a prisoner would be expected to serve until he would be suitable for parole.

The petitioner committed his crimes in 1991 prior to the effective date of the Revitalization Act. However, the application of the guidelines to him did not impose *ex post facto* punishment because parole guidelines are not laws. See e.g., DiNapoli v. Northeast Reg'l Parole Comm'n, 764 F.2d 143, 145-47 (2nd Cir. 1985); Sheary v. United States Parole Comm'n, 822 F.2d 556, 558 (5th Cir.1987); Dufresne v. Baer, 744 F.2d 1543, 1549-50 (11th Cir.1984); McKissick v. United States Parole Comm'n, 295 F. Supp. 2d 643 (S.D. W.Va. 2003); but see Forman v. McCall, 776 F.2d 1156, 1159 (3d Cir.1985) (noting that "if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes, this position has been rejected by every other circuit that has addressed the issue."). Thus, this claim is without merit.

### E. **Ground Four**

The petitioner's fourth claim is that the second hearing examiner, and by adoption of his recommendation, the Commission erred in considering disciplinary reports prepared by corrections officials. This claim is also without merit.

In making a parole decision for federal prisoners, the Commission may consider official reports of the prisoner's prior record, reports from the staff of the facility where the prisoner is confined, and any other relevant information concerning the prisoner that is reasonable available. See 18 U.S.C. §4207. Furthermore, in calculating the range of guidelines that a prisoner sentenced under the D.C. Code must serve, the Commission may consider a progress report prepared by the institution where the prisoner is incarcerated, which provides a summary of the disciplinary

infractions committed by the prisoner. A prisoner's institutional record, whether good or bad, is relevant to determining whether he or she will be able to live in the community without committing additional crimes and whether his or her release will be compatible with the welfare of society. See D.C. Code §24-404, Hall v. Henderson, 672 A.2d 1047, 1055 (D.C. 1996)(upholding D.C. Parole Board's decision to exceed the parole guidelines based upon negative institutional behavior). Finally, in determining parole guidelines, the Commission's regulations permit it to take into account "any substantial information available to it provided the prisoner is apprised of the information and afforded an opportunity to respond." See 28 C.F.R. §2.19(c).

Here, the report containing the list of disciplinary infractions committed by the petitioner was reviewed by him on February 24, 2004. See Response (dckt. 13) Exhibit O. At hearing examiner discussed the reports with the petitioner at the hearing and afforded him the opportunity to respond to the reports. Id. While denying his guilt, the petitioner admitted to being in the recreation yard where the riot took place. Id. After the hearing examiner discussed the report with the petitioner, he concluded that the BOP's findings in the report were more credible than petitioner's denial. Id. If there is a dispute concerning the accuracy of information that is part of the Commission's consideration, the dispute is to be resolved by the preponderance of the evidence, see 28 C.F.R. §2.19(c), and the Commission's determination as to the credibility of the progress report is not subject to review except for statutory, regulatory or constitutional violations. Garcia, supra at 988. Inasmuch as there is no evidence that the Commission exceeded its authority, the petitioner's fourth claim should also be dismissed.

### IV. Recommendation

Therefore, because the Parole Commission's decision did not violate constitutional, statutory,

regulatory or other restrictions, the undersigned recommends that the petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner and any counsel of record.

DATED: July 13, 2008

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE